IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WHALECO INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | Case No. 24-cv-09214 <br><br> **JURY DEMAND** |

**COMPLAINT**

Plaintiff Whaleco Inc. d/b/a Temu ("Plaintiff," "Whaleco," or "Temu"), hereby brings the present action against The Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. This Court has personal jurisdiction over Defendants since each of the Defendants directly targets business activities towards consumers in the United States, including the State of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

1

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

## THE PARTIES

4. Whaleco is a Delaware corporation with its principal place of business at 31 Saint James Ave., Suite 355, Boston, Massachusetts 02116.

5. Whaleco operates an ecommerce marketplace at temu.com ("TEMU.COM" or the "TEMU Marketplace"). The TEMU Marketplace is also accessible via the Temu mobile application, which can be downloaded on both the Apple App Store and the Google Play Store.

6. The TEMU Marketplace has operated in the United States since September 1, 2022. Consumers in the United States can purchase goods on the TEMU Marketplace from third party sellers in many categories, including clothing, household goods, cosmetics, appliances, and electronics.

7. TEMU.COM is an online marketplace that connects consumers with sellers, manufacturers, and brands around the world. The TEMU Marketplace is committed to offering the most affordable quality products to enable consumers and sellers to transact in an inclusive environment. To keep the TEMU Marketplace a safe and secure shopping environment for consumers, Plaintiff and its affiliates also provide risk control and data security services to protect consumers' personal and payment information.

8. Plaintiff, through its affiliate, Five Bells Limited, is the exclusive licensee of all rights, title, and interest in and to the TEMU word marks and TEMU design marks (collectively, the "TEMU Marks") identified in the below chart.

| Mark | Registration No. | Products/Services |
|---|---|---|
| [TEMU logo] | 7,145,476 | Provision of an online marketplace for buyers and sellers of goods and services in Class 35. |
| TEMU | 7,157,165 | Downloadable computer application software for mobile phones, namely, software for online shopping; computer programs, downloadable for online shopping; Downloadable computer software for online shopping; Downloadable computer software for use as an electronic wallet; Recorded computer programs for online shopping in Class 9. |
| [TEMU logo] | 7,157,220 | Downloadable computer application software for mobile phones, namely, software for online shopping; Downloadable computer programs for online shopping; Downloadable computer software for use as an electronic wallet; Downloadable computer software for online shopping; Recorded computer programs for online shopping in Class 9. |

| Mark | Registration No. | Products/Services |
|------|------------------|-------------------|
| TEMU | 7,164,306 | Provision of an online marketplace for buyers and sellers of goods and services in Class 35. |
| TEMU | 7,329,132 | Advertising services; development of marketing strategies, concepts and tactics, namely, audience development, brand awareness, online community building and digital word of mouth communications; providing business information; marketing services; systemization of information into computer databases; sales promotion for others in Class 35. |

9. The registrations are valid, subsisting, unrevoked, and uncancelled pursuant to 15 U.S.C. § 1065. The registrations for the TEMU Marks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the TEMU Marks pursuant to 15 U.S.C. § 1057(b). Genuine and authentic copies of the U.S. federal trademark registration certificates for the TEMU Marks are attached as **Exhibit 1**.

10. The TEMU Marketplace has enjoyed tremendous success in the U.S. market. More than one year after its launch, the TEMU app surpassed 100 million downloads on the Google Play Store alone and has been one of the most downloaded free applications in both the Google Play Store and the Apple App Store.

11. Plaintiff maintains quality control standards for all TEMU sites and applications. The Temu app is available for download through verified app stores, such as the Apple App Store and Google Play. True and correct screenshots of Plaintiff's genuine temu.com website are attached as **Exhibit 2.**

12. The TEMU Marks have been widely promoted throughout the globe including within the United States. Consumers and other members of the public not only associate Plaintiff's marketplace with exceptional quality, style, and affordable prices, but also recognize Plaintiff's marketplace in the United States originates exclusively with Plaintiff.

13. The TEMU Marks have never been assigned or licensed to any of the Defendants in this matter.

14. The TEMU Marks are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

15. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the TEMU Marks by working with key influencers and content creators, advertising on social media, and purchasing commercial ad spots, including its 2023 and 2024 "Shop Like a Billionaire" Super Bowl ads, which have been viewed over 1 billion times.

16. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's rights in the TEMU Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

17. In or around August 2024, Plaintiff identified the TEMU Marks being used in connection with the certain domain names, URLs, applications and/or unauthorized coupons and promotions identified in Schedule A to the Complaint (collectively the "Infringing Websites"). Defendants reproduced, displayed, and/or distributed the TEMU Marks in connection with the Infringing Websites without authorization or license from Plaintiff.

18. Defendants' use of the TEMU Marks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of products and services through the Infringing

Websites is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

19. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the TEMU Marks in connection with unauthorized services or products. The Infringing Websites feature the TEMU Marks and/or offer application downloads, coupons and other purportedly Temu-related content that are not authentic or associated with genuine Temu applications or websites. Plaintiff did not develop, inspect, or publish the websites or their applications, and did not approve them for distribution. Each Infringing Website offers infringing products and/or services to the United States, including Illinois, and, on information and belief, each Defendant has interactions or completed transactions into the United States, including with Illinois residents, under unauthorized and unlicensed use of the TEMU Marks. These interactions or transactions include, to name a few, transmitting applications for download, purportedly offering products for sale, and purportedly offering Temu coupons or credits. None of these were authorized by Temu.

20. Defendants go to great lengths to conceal their true identities, including registering domain names using privacy shields and utilizing rogue registration and hosting applications, and failing or refusing to publish verifiable contact information on their websites.

21. Defendants owning and/or operating the Infringing Websites are irreparably harming Plaintiff by using the TEMU Marks in their domain names, website content, or applications without authorization to create false associations with Temu and deceive consumers. True and correct screenshots of the Infringing Websites are attached as **Exhibit 3**.

22. Upon information and belief, Defendants will continue to maintain the Infringing Websites to offer unauthorized products and services and continue to create further counterfeit

websites or applications that infringe upon the TEMU Marks unless preliminarily and permanently enjoined. Plaintiff has no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. §1114)

23. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

24. Plaintiff's TEMU Marks and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value to Plaintiff. The TEMU Marks are highly distinctive and have become universally associated in the public mind with Plaintiff's TEMU Marketplace and related services. Consumers associate Plaintiff's TEMU Marks with Plaintiff, its TEMU Marketplace, and its Temu brand.

25. Without Plaintiff's authorization or consent and having knowledge of Plaintiff's rights in the famous TEMU Marks, Defendants have developed, distributed, offered for sale, and/or offered products or services to the consuming public in direct competition with Plaintiff. The Infringing Websites (including web pages and applications provided through them) are marketed and offered using marks which are identical or confusingly similar to Plaintiff's TEMU Marks. This direct competition of Defendants' unauthorized and unlicensed use and Plaintiff's genuine use of the TEMU Marks on products or services negatively affects consumers and interstate commerce.

26. Defendants' use of infringing and counterfeit versions of Plaintiff's TEMU Marks in conjunction with Defendants' unauthorized services or products is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the services or products. Defendants' unauthorized use is likely to deceive the public into believing the unauthorized services or products as being offered by Defendants originate from, are associated

with, or are otherwise authorized by Plaintiff, which in turn causes damage to Plaintiff's reputation, goodwill, sales, and future business opportunities.

27. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

28. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

**COUNT TWO**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. §1125(a))**

29. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

30. The unauthorized services and products sold and/or offered for sale by Defendants are of the same nature and type as Plaintiff's marketplace and services offered for sale by Plaintiff and, as such, Defendants' use of the TEMU Marks is likely to cause confusion to the general purchasing public.

31. By misappropriating and using Plaintiff's TEMU Marks and trade names, Defendants have created and are creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Websites and associated content by Plaintiff.

32. Defendants' unlawful, unauthorized, and unlicensed development, distribution, offer for sale, and/or sale of the unauthorized services and products creates express and implied misrepresentations that the services and products were created, authorized, or approved by Plaintiff, which only increase Defendants' profit and further damage and injure Plaintiff and the Temu brand.

33. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing Websites to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

34. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## JURY DEMAND

35. Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants in favor of Plaintiff on all counts as follows:

A. A judgment in favor of Plaintiff on all of the claims for relief pleaded herein;

B. An order requiring the domain registries and registrars for the Infringing Websites, including, but not limited to, Dynadot, EuroDNS S.A., GoDaddy, MarkMonitor, Name.com, NameCheap, Inc., American Registry for Internet Numbers (ARIN), NetEarth One, Inc., Active 24, and Tucows Domains, (collectively, the "Domain Registries and Registrars"), shall unlock and change the registrar of record for the domain names of the Infringing Websites to a registrar of Plaintiff's selection, and that the Domain Registries and Registrars shall take any steps necessary to transfer the Infringing Websites to a registrar account of Plaintiff's selection; or that the same Domain Registries and Registrars shall disable the Infringing Websites and make them inactive and untransferable;

C. An order requiring the Domain Registries and Registrars to disable the name server information for the Infringing Websites so that they are no longer accessible to Internet users for the pendency of this litigation;

D. An order requiring any Content Delivery Networks ("CDN"), such as Cloudflare and CloudFront, any hosting company, as well as any other service provider that provides content for the Infringing Websites to cease providing infringing content and make the Infringing Websites inaccessible to Internet users for the pendency of this litigation;

E. An order requiring the current domain name registrars for the domains incorporating TEMU Marks to change the registrar of record for the Infringing Websites from the current domain name registrar to Plaintiff's registrar of choice;

F. An order that Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the TEMU Marks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any website, applications, or any domain names;

    b. engaging in any act of federal, state, or common law trademark infringement or unfair competition that would damage or injure Plaintiff; and

    c. encouraging, participating in or assisting in any of the above activities;

G. An order that the Defendants be required to account for and pay to Plaintiff all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct, as alleged herein and that the amount of damages for infringement of Plaintiff's TEMU Marks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

H. In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the TEMU Marks;

I. That Plaintiff be awarded reasonable attorneys' fees and costs; and

J. That Plaintiff be granted such other and further relief as the court deems just and proper.

Date: September 30, 2024             Respectfully submitted,

By: /s/ Shengmao Mu
Abby Neu ARDC 6327370
Shengmao (Sam) Mu, NY #5707021
Keaton Smith ARDC 6347736
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*